# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA CUMMINGS, an individual on behalf of herself and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>G6 HOSPITALITY LLC, a Limited Liability Company; MOTEL 6 OPERATING L.P., a Limited Partnership; and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No.: 19-CV-00122-GPC-LL<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>**[ECF No. 11.]** |

Before the Court is a motion to remand a putative wage and hour class action arising from numerous allegations of California Labor Code violations. Plaintiff Christina Cummings ("Plaintiff") filed the motion on February 15, 2019. (ECF No. 11.) Defendants G6 Hospitality, LLC and Motel 6 Operating L.P. ("Defendants") filed an opposition on March 5, 2019 (ECF No. 16), which Plaintiff replied to on March 12, 2019 (ECF No. 18).

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument. For the reasons set forth below, the Court **GRANTS**

Plaintiff's motion to remand.

## I. Background

On November 5, 2018, Plaintiff, seeking to represent a class of non-exempt employees who were allegedly underpaid due to Defendants' "uniform policy and practice which failed to lawfully compensate these employees for all their overtime worked," filed a class action complaint in San Diego Superior Court alleging the following claims: (1) unfair competition; (2) failure to pay minimum wages; (3) failure to pay overtime wages; (4) failure to provide required meal periods; (5) failure to provide required rest periods; (6) failure to provide accurate wage statements; and (7) failure to provide wages when due. (ECF No. 1-2, at 2). On January 3, 2019, Plaintiff filed a First Amended Complaint ("FAC") which detailed a new allegation pursuant to the Private Attorneys General Act, Cal. Lab. Code § 2698 *et seq.* (ECF No. 1-4, at 39.) Plaintiff's FAC alleged the amount-in-controversy for the "aggregate claim of California Class Members" was under five million dollars ($5,000,000.00). (ECF No. 1-4 at 4.)

On January 17, 2019, Defendants removed this putative class action from state court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C § 1332(d). (ECF No. 1, at 3). On February 15, 2019, Plaintiff filed her motion to remand, challenging federal jurisdiction under CAFA. (ECF No. 11). Plaintiff's motion does not dispute either the diversity or the class size requirements under CAFA, but instead solely challenges Defendants' assertion that the amount-in-controversy requirement is satisfied. (ECF No. 11-1, at 2).

## II. Legal Standard

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount-in-controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Inv.,* 775 F. 3d 1193, 1195 (9th Cir. 2015) (*citing* 28 U.S.C. § 1332(d)). To avail itself of the federal forum, a

defendant is required only to offer a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). A "defendant's amount-in-controversy allegations should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operation Co., LLC v. Owens*, --- U.S.----, 135 S. Ct. 547, 553 (2014). However, if a plaintiff challenges the defendant's assertion of the amount-in-controversy, then "[e]vidence establishing the amount is required." *Id.* at 554. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* The defendant bears the burden of proving jurisdiction, and as a result, "if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra*, 775 F.3d at 1199.

"In determining the amount-in-controversy, courts first look to the complaint. Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" *Id.* at 1197 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount-in-controversy exceeds $5 million when federal jurisdiction is challenged." *Id.* (citing *Rodriguez v. AT&T Mobility Servs. LLC,* 728 F.3d 975, 977 (9th Cir. 2013)). "[T]his rule is not altered even if plaintiffs affirmatively contend in their complaint that damages do not exceed $5 million." *Id.*

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198. "[A]ssumptions cannot be pulled from thin air." *Id.* at 1199.

## III. Discussion

Defendants claim that the amount in controversy is $65,458,790. Defendants arrive at this figure by adding their valuation of the damages from (1) Plaintiff's claim for wage statement penalties, Cal. Lab. Code § 226, (2) Plaintiff's claim for waiting time penalties, Cal. Lab. Code § 203, and (3) by assuming a 25% benchmark rate for attorneys' fees. (ECF No. 1, at 5–6.)

| CLAIM | AMOUNT[1] |
|---|---|
| (i) Wage Statement Penalties. Cal. Lab. Code § 226<br><br>(**Total # All Employees** during statutory period "A") x ($50) + (Total # Wage Statements During Statutory Period Minus "A") x ($100) | **$8,035,500.00** |
| (ii) Waiting Time Penalties. Cal. Lab. Code § 203<br><br>(Average Hourly Rate: $11.17) x (8 hours worked per day) x (Max. Statutory Penalties: 30 days) x (**Total # of employees terminated** during statutory period: 7,855) | **$21,057,685.00** |
| (iii) Attorneys' Fees 25% Benchmark<br><br>Total of § 226 + § 203 penalties: $29,093,284) x (.25 Benchmark) = | **$7,272,321.00** |
| Total with Attorney's Fees | **$65,458,790** |

In computing the first two of the three categories of damages, Defendants relied on a 100% violation rate—i.e., they assumed that statutory violations occurred with respect to the wage statements and the timeliness of payment for all class member employees.

---

[1] Defendants' calculations relied on several figures and personnel data provided in the Declaration of Mike Moore, the Vice President of Enterprise Human Resources at G6. (ECF No. 1-7, at 2.) Specifically, Mr. Moore advised that during the time relevant to Plaintiff's lawsuit, Defendants employed at least 5,446 employees who received approximately 83,079 wage statements. Also during this time, at least 7,885 putative class members left employment with Defendants, and had earned an average hourly rate of $11.17.

4

(ECF No. 16, at 10.) Plaintiff dispute that 100% violation rate was reasonable based on the allegations in her FAC, which she claims pertained only to those class members who worked overtime. Thus, the issue of remand hinges on the reasonableness *vel non* of Defendants' use of a 100% violation rate to calculate the amount-in-controversy.

### A. The Reasonableness of Assuming a 100% Violation Rate

"Whether a CAFA defendant may assume a 100% violation rate has become a common question that requires parsing a Plaintiff's allegations." *Vasquez v. Randstad US, L.P*, 2018 WL 327451 at *3 (N.D. Cal). There are two components to the reasonableness inquiry.

First, the allegations in the plaintiff's complaint must lend themselves to the assumption of a 100% violation rate. *Compare id.* (holding that a 100% violation rate was reasonable because plaintiff alleged defendant "consistently" failed to provide accurate wage statements); *with Ibarra*, 775 F. 3d at 1198–99 (concluding that a 100% violation rate was unreasonable given plaintiff's generalized language of "pattern and practice"). Second, the defendant must then actually set forth evidence that it committed the claimed violations 100% of the time. *See e.g. Moreno v. Ignite Restaurant Group*, 2014 WL 1154063, *5 (N.D. Cal. 2014) ("[C]ourts disavow the use of a 100% violation rate when calculating the amount in controversy absent evidentiary support," and failure to provide "any support of a 100 percent violation rate, such as evidence based on . . . records or a random sampling . . . is not sufficient to establish the amount in controversy by a preponderance of the evidence.")

Differently put, if a plaintiff's pleadings "support the inference that a defendant may potentially violate the law in each and every situation where those policies are applied . . .[then] a defendant may establish the amount-in-controversy by presenting admissible statistical evidence taken from a representative sample and extrapolat[e] to calculate the potential liability for the frill class." *Salcido v. Evolution Fresh, Inc.*, No. 214CV09223SVWPLA, 2016 WL 79381, at *4 (C.D. Cal. Jan. 6, 2016) (citing *LaCross v. Knight Tramp. Inc.*, 775 F.3d 1200, 1202–03 (9th Cir. 2015)).

## B. Plaintiff's FAC does not support a 100% violation rate

Applying the Ninth Circuit's framework to the Plaintiff's FAC, Defendants' utilization of a 100% violation rate based on the Plaintiff's allegations of wage statement penalties, CAL. LAB. CODE § 226, and waiting time penalties, CAL. LAB. CODE § 203, is unreasonable.

### 1. Wage Statement Penalties (Cal. Lab. Code § 226)

Defendants assert the amount-in-controversy is satisfied by virtue of Plaintiff's sixth cause of action alleging that Defendants knowingly and intentionally violated California Labor Code section 226. (ECF Nos. 1, at 5; 16, at 12).

Pursuant to California Labor Code section 226(e)(1), "[A]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." CAL. LAB. CODE § 226(e)(1).

Defendants allege this claim alone totals $8,035,600 based upon the following calculations: First, Defendants multiplied the estimated number of individuals employed at Motel 6 during the one-year statutory period (5,446) by $50 to arrive at $272,300. Second, Defendants took the approximate number of wage statements sent to employees during the same period of liability (83,079) and subtracted the same total number of employees (5,446), to arrive at a total of 77,633 wage statements, which number Defendants then multiplied by $100. Finally, Defendants added the two sub-totals to arrive at $8,035,600. (ECF No. 1, at 5). These calculations reflect Defendants' assumption that every single full-time employee worked overtime and received two non-compliant wage statements.

Plaintiff contends that Defendants pulled out of "thin air" the assumption that all of the wage statements (83,079) of all of the employees (5,446) were implicated by the sixth cause of action. *Ibarra*, 775 F. 3d at 1199.

The Court agrees with Plaintiff. Defendants' assumption of a 100% violation rate significantly overstates the allegations in Plaintiff's FAC. First, Plaintiff's allegations of violations under section 226 are qualified to "[w]hen Plaintiff and other California Class Members worked overtime in the same pay period they earned incentive wages and/or missed meal and rest breaks." (ECF No. 1-4, at 37 (emphasis added).) Secondly, Plaintiff only alleges that "*from time to time* Defendants provided Plaintiff and the other members of the California Class with wage statements which violated Cal. Lab. Code § 226." (ECF No. 1-4, at 37 (emphasis added).) That is not the diction of absoluteness. *See, e.g.*, *Salazar v. Johnson & Johnson Consumer Inc.*, No. 2:18-CV-05884-SJO-E, 2018 WL 4560683, at *4 (C.D. Cal. Sept. 19, 2018) (holding that the "from time to time" language limits the scope of the plaintiff's allegations so that an assumption of "regular and consistent violations" were untenable).

Accordingly, Defendants' inference of a 100% violation rate is unreasonable because it hinges upon the following flawed assumptions: (1) every single employee during the statutory period had at least two inaccurate wage statements; and (2) every single employee terminated during the statutory period was a full-time employee who "worked overtime in the same pay-period they earned incentive wages and/or missed meal and rest breaks." (ECF No. 1-4, at 37). Defendants have not provided reliable evidentiary bases for either assumption: Plaintiff's FAC certainly does not lend Defendants' 100% violation rate any succor, and Defendant has introduced no evidence that the 100% violation rate is reasonable given its own records. *See Nolan v. Kayo Oil Co.*, No. C 11-00707 MEJ, 2011 WL 2650973, at *5 (N.D. Cal. July 6, 2011) (finding the defendant's exposures calculation too speculative because, despite access to "its employment and payroll records," the defendant failed to "provide accurate figures as to how many employees worked overtime, the number of meal periods taken or not taken . .

7

. ."); *accord Salazar*, 2018 WL 4560683, at *4. Thus, the Court finds that the utilization of a 100% violation rate to calculate the putative class's monetary recovery on the wage statement penalty claim is "not grounded in real evidence." *See Ibarra*, 775 F.3d at 1199.

In an attempt to resist this conclusion, Defendants argue that, notwithstanding their failure to substantiate their claim of a 100% violation rate, Plaintiff should be penalized for not coming forward with an alternative violation rate of her own. This argument is akin to a suggestion that Plaintiff is obligated to prove that the amount in controversy is less than $5 million. For that reason, it must be rejected. "Given that Defendants have not met their burden, it is not necessary for Plaintiff to come forward with evidence in support of h[er] estimate of the in controversy. Where, as here, the evidence is in equipoise, *i.e.*, no evidence on either side, 'the scales tip against federal-court jurisdiction.'" *Vilitchai v. Ametek Programmable Power, Inc.*, No. 15CV1957-L(BLM), 2017 WL 875595, at *4 (S.D. Cal. Mar. 6, 2017) (quoting *Ibarra*, 775 F.3d at 1119).

### 2. Waiting Time Penalties (Cal. Lab. Code § 203)

Defendants additionally assert that even if the amount-in-controversy is not satisfied based upon the wage statement penalties, the amount-in-controversy would still exceed the requisite $5 million given Plaintiff's seventh cause of action for waiting time penalties. (ECF No. 16, at 8).

Under California Labor Code section 203, "[I]f an employer willfully fails to pay, without abatement or reduction in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." CAL. LAB. CODE § 203.

Applying the above statute to Plaintiff's FAC, Defendants again employ a 100% violation rate—i.e., one which includes *all* employees terminated during the statutory period—to arrive at a total of $21,057,684 "in potential waiting time penalties." (ECF No. 1, at 6). Defendants utilize the following statistics from the declaration of Mike

8

Moore, their Vice President of Human Resources, to arrive at their calculation: (1) at least 7,855 employees terminated their employment during the statutory liability period of three years[2]; and (2) these employees received an average hourly rate of $11.17.[3] (ECF No. 16, at 10.) Defendants allege that a 100% violation rate is warranted because Plaintiff's FAC "demands up to thirty days of pay as penalty for not paying *all wages* due at time of termination for *all employees* who terminated employment during the California Labor Sub-Class Period." (ECF No. 16, at 10 (emphasis added).)

In other words, Defendants insist Plaintiff's use of the phrase "all employees," supports a reasonable assumption of a 100% violation rate. (*Id.*). This is a flawed assumption, however, because it depends upon an isolated reading of the FAC. The full context of Plaintiff's waiting time claim reads as follows:

> The employment of Plaintiff and *many* California Labor Sub-Class Members terminated and Defendants have not tendered payment *of overtime wages,* to *these employees who actually worked overtime*, as required by law.

(ECF No. 1-4, at 39 (emphases added).)

> Therefore, as provided by Cal. Lab. Code § 203, on behalf of themselves and *the members* of the California Labor Sub-Class *whose employment* has, [sic] Plaintiff demands up to thirty days of pay as penalty for not paying all wages due at time of termination for all employees who terminated employment during the California Labor Sub-Class Period.

(*Id.* (emphases added).)

Accordingly, Defendants' 100% violation rate is without basis because Defendants fail to reconcile that the phrase "all employees" is modified by the "many" in the preceding paragraph of Plaintiff's FAC. Indeed, it is "all

---

[2] *See Pineda v. Bank of America*, 50 Cal. 4th 1389, 1395 (2010) (explaining the three- year statutory period under Cal. Lab. Code § 203).

[3] Defendants multiply the number of estimated employees who terminated employment with Motel 6 during the statutory period 7,855 with the maximum 30 day penalty with the average daily rate of $89.36 to arrive a their total of $21,057,684. (ECF No. 16 at 10).

9

employees" of the "many California Labor Sub-Class Members *who worked overtime*," who are allegedly entitled to damages. Furthermore, Plaintiff's decision to qualify the sub-class entitled to the waiting time penalties as "many" instead of as "all," indicates Plaintiff does not allege that every single member of the putative class is owed. This is especially so, since "the Ninth Circuit appears to have disavowed the use of a 100% violation rate." *Weston v. Helmerich & Payne Int'l Drilling Co.*, 2013 WL 5274283 (E.D. Cal. Sept. 16, 2013) (citing *Garibay v. Archstone Communities LLC*, 539 F. App'x 763 (9th Cir. Aug. 27, 2019) (unpublished)). If the "pattern and practice" of violations alleged in *Ibarra* was insufficient to sustain the assumption of a 100% violation rate, the Court discerns no justifiable basis for assuming one in this case, when Plaintiff limited her claims to a specified subsect of the sub-class—i.e., those who had worked overtime. *Ibarra*, 775 F.3d at 1199 ("[A] 'pattern and practice' of doing something does not necessarily mean *always* doing something.").

As before, the Court is not prepared to fault Plaintiffs for not setting forth an alternative violation rate when Defendants have not sustained their burden to show why their claimed rate was reasonable. Thus, the Court finds that Defendants do not meet their burden that Plaintiff's claims of waiting time violations exceeds the $5 million amount-in-controversy requirement.

### 3. Attorney's Fees

Finally, Defendants' allege that the Plaintiff's request for attorney fees adds an additional $7,273,321 to the amount-in-controversy. (ECF No. 1, at 7). Defendants arrive at that total based upon a 25% "benchmark" recovery scheme. (ECF No. 1, at 6.) Although Defendants are correct that attorney fees may be properly included in calculations of the amount-in-controversy, Defendants did not establish "by a preponderance of the evidence that the underlying amount upon which those fees would be based is at least $4 million, as would be required to meet the $5 million minimum." *Garibay*, 539 F. App'x at 764; *see also Kroske v. U.S. Bank Corp.,* 432 F. 3d 976, 980

(9th Cir. 2005) (explaining that statutory fees may be aggregated to arrive at the amount-in-controversy).  Accordingly, Defendants' fee calculation is unsupported.

### 4.  CONCLUSION

For the reasons stated above, Plaintiff's Motion to Remand is **GRANTED**.  (ECF No. 11.)  The motion hearing set for this matter on April 5, 2019 is accordingly **VACATED.**

**IT IS SO ORDERED.**

Dated:  April 2, 2019

Hon. Gonzalo P. Curiel
United States District Judge